**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| RODNEY AUSTIN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 05-CV-150-TCK-FHM |
| | ) |
| RON WARD, Director, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

This is a proceeding on Petitioner's 28 U.S.C. § 2254 habeas corpus petition. Petitioner is in custody of the Oklahoma Department of Corrections and appears in this matter *pro se*. Respondent filed a response (Dkt. # 9) to the petition and provided the state court records (Dkt. #s 9 and 10) necessary for resolution of Petitioner's claims. Petitioner filed a reply (Dkt. # 18) to the response. For the reasons discussed below, the Court finds the petition should be denied.

### *BACKGROUND*

On the evening of February 18, 2002, Lindsey Engel and Herman Galatas, both students at Oral Roberts University, were doing laundry at Engel's apartment in Tulsa, Oklahoma. As they entered Engel's apartment, a man pulled a gun on them, ordered them to the ground, and demanded their wallets. With the gun held to his temple, Galatas gave the man his wallet. After finding the wallet empty, the man threw the wallet back to Galatas. The man then held the gun to Engel's temple. She also gave the man her wallet. He took $10 and an ATM card from Engel's wallet. He then ordered them into the apartment. He made Galatas take off all of his clothes, then put him in the bathroom where he remained for approximately 30 minutes. Next, he made Engel take off all of her clothes and get on her hands and knees. He rubbed her back and her vagina. Then, he made Engel go to the bedroom and get on her hands and knees on the floor. He again rubbed her back and

vagina, and then inserted his fingers into her vagina. He moved them in and out a few times. Next, he made Engel lie on her back on the bed. He kissed her chest, her stomach, and her vagina. As he left the apartment, he took cell phones belonging to Engel and Galatas. Once he was gone, Engel and Galatas put their clothes on and called the police. As a result of their investigation, the police determined that Petitioner Rodney Austin was a suspect. A photo array containing an old photo of Petitioner was shown to Engel and Galatas. Engel was unable to identify anyone, stating that she was not sure. See Dkt. # 18, Ex. D, "Supplemental Offense Report" at 7. Galatas "tentatively" identified Petitioner Rodney Austin. Id. After the police acquired a recent photo of Petitioner, a second photo array was prepared. Both Engel and Galatas selected Petitioner Rodney Austin as their assailant from the photos presented during the second lineup. Id. at 8.

As a result of these events, Petitioner was charged with robbery with a firearm (Counts 1 and 2), forcible sodomy (Count 3), and rape by instrumentation (Count 4), in Tulsa County District Court, Case No. CF-2002-1218. Petitioner was tried by a jury and found to be guilty as charged. At trial, both Engel and Galatas testified and identified Petitioner, Rodney Austin, as the man who committed the criminal acts on February 18, 2002. They both testified they had no doubt and were positive about their identifications. Petitioner received sentences of twenty (20) years imprisonment on each of Counts 1, 2, and 3, fifteen (15) years on Count 4, and fines of $5,000 on each count. Petitioner was represented at trial by attorney Jack Winn.

Petitioner appealed to the Oklahoma Court of Criminal Appeals ("OCCA"). On appeal, Petitioner was represented by attorney Kimberly D. Heinze. He raised three (3) claims as follows:

> Proposition 1: The State's evidence was insufficient to support Mr. Austin's conviction for forcible oral sodomy.

> Proposition 2: In the alternative, instructional error left Mr. Austin's jury without the option of a lesser offense supported by the evidence, denying him a fair trial and requiring modification of the judgment and sentence imposed in Count 3.
>
> Proposition 3: The State's evidence was insufficient to support Mr. Austin's conviction for robbery of Herman Galatas with a firearm.

(Dkt. # 9, Ex. 1). On November 6, 2003, in an unpublished summary opinion entered in Case No. F-2002-1397 (Dkt. # 9, Ex. 3), the OCCA affirmed the Judgment and Sentence of the trial court.

On November 4, 2004, Petitioner filed a *pro se* application for post-conviction relief in the state district court. See Dkt. # 9, Ex. 4. He asserted the following claims:

> 1. Petitioner received ineffective assistance of appellate counsel in his direct appeal in Austin v. State, F-2002-1397; in violation of Sixth and Fourteenth Amendments.
>    A. Petitioner's initial arrest for the charges stated in CF-02-1040 was without probable cause.
>    B. Petitioner received ineffective assistance of counsel in Case No. CF-2002-1218, in violation of the Sixth and Fourteenth Amendments.
>    C. Petitioner establishes his appellate counsel's ineffectiveness for omitting his Fourth Amendment violation on his direct appeal in No. F-2002-1397.
>
> 2. Motion for transcripts.

(Dkt. # 9, Ex. 4). By order filed December 8, 2004 (Dkt. # 9, Ex. 5), the state district court denied post-conviction relief. Petitioner appealed and by order filed February 14, 2005, in Case No. PC-2004-129 (Dkt. # 9, Ex. 7), the OCCA affirmed the denial of post-conviction relief.

On March 18, 2005, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1). In his petition, Petitioner raises four (4) grounds of error, as follows:

> Ground 1: Petitioner was denied effective assistance of counsel on his direct appeal, in violation of his 6th and 14th Amendment rights [for failing to challenge validity of photo used for lineup identification].
>
> Ground 2: The State's evidence was insufficient to support Appellant's conviction for forcible oral sodomy.

3

  Ground 3: Instructional error left Appellant's jury without the option of a lesser offense supported by the evidence, deny [sic] him a fair trial and requiring modification of the Judgment and Sentence imposed in Count 3.

  Ground 4: The State's evidence was insufficient to support Appellant's conviction for robbery of Herman Galatas with a firearm.

(Dkt. # 1). In response to the petition, Respondent asserts that habeas corpus relief is either not cognizable or not warranted under the 28 U.S.C. § 2254(d) standard. See Dkt. # 9. Respondent has provided copies of the trial transcripts and the state court record for this case. See Dkt. # 10.

## *ANALYSIS*

### A. Exhaustion/Evidentiary Hearing

The Court finds that the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied in this case because Petitioner fairly presented all claims to the OCCA on either direct or post-conviction appeal. In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Michael Williams v. Taylor, 529 U.S. 420 (2000).

### B. Claims adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim a petitioner may obtain federal habeas relief only if the state decision "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal

law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In this case, the OCCA adjudicated each of Petitioner's grounds 2, 3, and 4 on direct appeal and ground 1 on post-conviction appeal. Therefore, to the extent Petitioner's claims are cognizable in a federal habeas corpus proceeding, those claims shall be reviewed pursuant to § 2254(d).

### *1. Ineffective assistance of appellate counsel (ground 1)*

As his first ground for relief, Petitioner asserts he was denied the effective assistance of appellate counsel. He claims that appellate counsel provided ineffective assistance in failing to raise a claim challenging the procedures used to obtain his identification from photo lineups. In affirming the state district court's denial of post-conviction relief, the OCCA rejected Petitioner's claims of ineffective assistance of appellate counsel as follows:

> Petitioner has failed to establish entitlement to post-conviction relief. Any meritorious claim that his arrest in this case was illegal, and that evidence of his crimes should have been suppressed, could have and would have been raised prior to Petitioner's trial or in his direct appeal. All issues that could have and should have been previously raised are waived and may not be the basis of a post-conviction application. 22 O.S.2001, § 1086; *Fowler v. State*, 1995 OK CR 29, ¶ 2, 896 P.2d 566, 569.
> Petitioner attempts to avoid procedural bar by claiming his appellate counsel was ineffective. To support a claim of ineffective counsel, Petitioner must establish his counsel's performance was deficient under prevailing professional norms and that but for the deficient performance the outcome of his trial and appeal would have been different, or he must establish factual innocence. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674, 693, 698. Petitioner has not established either that all facts of Case No. CF-2002-1040 are the same as the facts in this case, or that the reasons for dismissal of charges in Case No. CF-2002-1040 are truly applicable to this case. Thus, he has not established that the outcome of his trial and appeal would have or should have been different. *Id.* Petitioner has also not established that he is factually innocent. *Id.* Therefore, the

5

> order of the District Court of Tulsa County denying Petitioner's application for post-conviction relief in Case No. CF-2002-1218 should be, and is hereby, **AFFIRMED**.

(Dkt. # 9, Ex. 7).

Petitioner is not entitled to relief on his claim of ineffective assistance of appellate counsel unless he establishes that the OCCA's adjudication of the claim, as raised on post-conviction appeal, was an unreasonable application of federal law as determined by the United States Supreme Court. The applicable standard was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). The Strickland test requires a showing of both deficient performance by counsel and prejudice to petitioner as a result of the deficient performance. Id. at 687. When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999). If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance. Id.; see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998) (citing United States v. Cook, 45 F.3d 388, 392-93 (10th Cir. 1995)). If the issue has merit, the Court then must determine whether counsel's failure to raise the claim on direct appeal was deficient and prejudicial. Hawkins, 185 F.3d at 1152; see also Cook, 45 F.3d at 394. The relevant questions for assessing a petitioner's claim of ineffective assistance of appellate counsel are whether appellate counsel was "objectively unreasonable" in failing to raise the omitted claims on appeal and, if so, whether there is a "reasonable probability that, but for his counsel's unreasonable failure" to raise the claims, petitioner "would have prevailed on his appeal." Neill, 278 F.3d at 1057 (citing Smith v. Robbins, 528 U.S. 259, 285-86 (2000) (applying Strickland, 466 U.S. at 687-91)).

Upon review of the record in this case, the Court finds Petitioner has failed to establish that the OCCA's adjudication of the claim of ineffective assistance of appellate counsel was an unreasonable application of Strickland and he is not entitled to habeas corpus relief under § 2254(d). Petitioner claims that his photograph used in the second photo lineup shown to the victims in CF-2002-1218, was "fruit of the poisonous tree" because it was taken as part of a police investigation for a series of robberies, including a charge of robbery with firearm filed in Tulsa County District Court, Case No. CF-2002-1040. That charge was ultimately dismissed at the conclusion of the preliminary hearing held in Case No. CF-2002-1040. See Dkt. # 18.[1] Petitioner states that "had it not been for his unlawful arrest of February 22nd, 2002, for the crime alleged against him in Case No. CF-2002-1040, the police would not have obtained the photograph that led to his subsequent identification by the complaining witnesses in the instant case and, ultimately, prosecution of the case." See Dkt. # 18 at 3.

Under the Fourth Amendment, evidence obtained from an unlawful search or seizure is generally subject to exclusion as "fruit of the poisonous tree." See Wong Sun v. United States, 371 U.S. 471, 484-85, 488 (1963). The rule of exclusion is not a *per se* rule but depends on the circumstances and on whether those circumstances show sufficient attenuation from the constitutional violation that the subsequent evidence should be admitted. United States v. Beckwith,

---

[1] In reply to the State's response, see Dkt. # 18, Petitioner provides a copy of a "Supplemental Offense Report" prepared by Detective Bob Little of the Tulsa Police Department, and a partial transcript from the preliminary hearing held in Case No. CF-2002-1040. The supplemental report reflects Petitioner's suspected involvement in multiple robberies and sexual assaults occurring on February 18, 2002, including the robberies and sexual assaults giving rise to the convictions challenged in this habeas action. Petitioner relies on the report to support his claim that a photograph taken of him after his arrest as a result of the incidents occurring on February 18, 2002, was used in photo arrays shown to the robbery victims in Case No. CF-2002-1218.

7

22 F.Supp.2d 1270, 1287 (D. Utah 1998). The proper inquiry is whether the evidence was obtained through exploitation of the primary illegality or instead by means sufficiently distinguishable so as to purge the evidence of its taint. Wong Sun, 371 U.S. at 487-88. In the instant case, the photograph of Petitioner used in the photo lineups itself was not admitted into evidence at the trial. Nor was evidence of the photo array. Thus, Petitioner's argument turns on the proposition that his counsel should have sought suppression of his identification because his photograph used in the lineup was "fruit of the poisonous tree" obtained following an illegal arrest.[2]

The Court finds that Petitioner has failed to present any evidence or argument suggesting that had his attorney filed a motion to suppress, the victims' identification of Petitioner would have been suppressed due to an improper police procedure that tainted Petitioner's in-court identification. As a preliminary matter, Petitioner has presented nothing to suggest that his arrest preceding the dismissal of the charge(s) filed in CF-2002-1040 was illegal. Assuming for the sake of argument that the arrest giving rise to the charge(s) filed in CF-2002-1040 was illegal, the identification of Petitioner by the victims in Case No. CF-2002-1218 was not subject to suppression because it was sufficiently remote and attenuated from the illegal arrest to be free of the taint resulting from the illegal arrest. Wong Sun, 371 U.S. at 487-88; Brown v. Illinois, 422 U.S. 590, 603 (1975) (identifying three factors for evaluating attenuation). In United States v. Crews, 445 U.S. 463 (1980), the criminal defendant sought suppression of his identification by the robbery victim, arguing that because his arrest giving rise to the charge in that case was illegal, the in-court identification should be suppressed as "fruit of the poisonous tree." The Supreme Court rejected the

---

[2]Significantly, Petitioner does not challenge the reliability of either the pre-trial photo lineup identifications or the trial identifications.

claim, noting that a defendant can not claim immunity from prosecution simply because his appearance in court was precipitated by an unlawful arrest. Id. at 474. This is true because a defendant "is not himself a suppressible 'fruit'" and cannot challenge his presence at trial on that basis. Id.

Furthermore, the Tenth Circuit has held that where the record establishes that in-court identifications of a defendant were independently valid, any error in failing to suppress a photographic array containing a photograph of the defendant obtained pursuant to an unrelated, illegal arrest was harmless. United States v. Slater, 692 F.2d 107, 108 (10th Cir. 1982) (relying on Crews, 445 U.S. 463 (1980)). The record in this case supports a determination that the victims' courtroom identifications were not unduly influenced by the pretrial identifications and were, therefore, independently valid. Factors to consider in making this determination include "the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification." United States v. Wade, 388 U.S. 218, 241 (1967). In this case, Engel and Galatas, the victims of the criminal episode on February 18, 2002, testified that the lighting conditions were good and they were able to see the man's face clearly. See Dkt. # 10, Tr. Trans. at 153, 154, 175, 181. Neither victim identified anyone else prior to identifying Petitioner. Only four (4) days passed between the criminal episode and Engel's identification of Petitioner in the second photo array. See Dkt. # 18, Exs. D and E. Eight (8) days passed between the criminal episode and Galatas' identification of Petitioner in the second photo array. Id., Exs. D and F. At trial, both victims

identified Petitioner as their assailant with certainty. See Dkt. # 10, Tr. Trans. at 160, 185. In light of these facts, the Court finds that the in-court identifications of Petitioner were independently valid. As a result, appellate counsel did not perform deficiently in omitting a challenge to the failure to suppress the identification of Petitioner from a photographic array because any error was harmless. Slater, 692 F.2d at 108. Accordingly, under § 2254(d), Petitioner is not entitled to habeas corpus relief on his claim of ineffective assistance of appellate counsel.

### *2. Sufficiency of the evidence (grounds 2 and 4)*

As his second proposition of error, Petitioner challenges the sufficiency of the evidence supporting his conviction of forcible oral sodomy. See Dkt. # 1. On direct appeal, Petitioner specifically argued that the State had failed to prove the penetration element essential to the crime of forcible oral sodomy. See Dkt. # 9, Ex. 1 at 5. As his fourth proposition of error, Petitioner claims that the State produced insufficient evidence to support his conviction of robbery with a firearm as to Herman Galatas. See Dkt. # 1. On direct appeal, Petitioner alleged that the evidence was insufficient to prove the elements of taking and carrying away personal property form the person (or presence) of Mr. Galatas. See Dkt. # 9, Ex. 1 at 14. In affirming Petitioner's convictions on direct appeal, the OCCA rejected these claims, finding as follows:

> In Proposition I, we find sufficient evidence was presented from which a rational juror could find the element of penetration to support the conviction for forcible oral sodomy. *See Salyers v. State*, 755 P.2d 97, 100 (Okl.Cr.1988). *See also Riley v. State*, 947 P.2d 530, 532 (Okl.Cr.1997).
> 
> \* \* \* \*
> 
> In Proposition III, we find the evidence was sufficient to support the conviction for armed robbery in Count II. *See Webb v. State*, 732 P.2d 478, 479 (Okl.Cr.1987).

(Dkt. # 9, Ex. 3).

10

As stated above, a writ of habeas corpus will not be issued on a state claim adjudicated on the merits unless the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. at § 2254(d)(2). "[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Tenth Circuit authority is divided as to "whether, under AEDPA, we review a sufficiency-of-the-evidence issue as a legal determination under 28 U.S.C. § 2254(d)(1) or a factual finding under § 2254(d)(2) and (e)(1)." Romano v. Gibson, 239 F.3d 1156, 1164 n. 2 (10th Cir. 2001). Under either standard, Petitioner's claim in this case fails.

In examining Petitioner's sufficiency of the evidence claims, the appropriate inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). In evaluating the evidence presented at trial, the Court does not weigh conflicting evidence or consider witness credibility. Wingfield v. Massie, 122 F.3d 1329, 1332 (10th Cir. 1997); Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996). Instead, the Court must view the evidence in the "light most favorable to the prosecution," Jackson, 443 U.S. at 319, and "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993). Under the AEDPA, the Court must decide whether the OCCA's decision that there was sufficient evidence to support a jury's finding of guilt was contrary to or an unreasonable application of Jackson. See 28 U.S.C. § 2254(d)(1); Spears v. Mullin, 343 F.3d 1215, 1238-39 (10th Cir. 2003).

11

This Court looks to Oklahoma law for the substantive elements of the crimes at issue for application of the sufficiency of the evidence standard. See, e.g., Spears v. Mullin, 343 F.3d 1215, 1238 (10th Cir. 2003); see also Jackson, 443 U.S. at 324 n. 16. Petitioner's jury was properly instructed that the elements of Forcible Oral Sodomy, are as follows: (1) penetration; (2) of the vagina of the victim; (3) by the mouth of the defendant; (4) by threats of force or violence accompanied by the apparent power of execution. See Dkt. # 9, Ex. 14 (citing OUJI-CR (2d) 4-128). The instruction also informed the jury that "any sexual penetration, however slight, is sufficient to complete the crime." Id. In Riley v. State, 947 P.2d 530 (Okla. Crim. App. 1997), a decision cited by the OCCA in support of its rejection of this claim on direct appeal, the OCCA held that the victim's testimony that the defendant had kissed and licked her "pee pee" was sufficient evidence to support the element of penetration essential for forcible oral sodomy. In addition, in Bales v. State, 829 P.2d 998 (Okla. Crim. App. 1992), the OCCA held that "we do not require graphic testimony concerning the actual penetration, but will review the evidence as a whole to see if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 999 (quotation omitted).

At Petitioner's trial, Engel testified that while she was on her hands and knees, Petitioner had rubbed her back and her vagina, and inserted his fingers into her vagina. See Dkt. # 10, Tr. Trans. at 174. He also forced her to lie on her back and then "kissed" her chest, stomach, and vagina and "rubbed it with his hands." See id. at 174, 180. After viewing the evidence in the light most favorable to the prosecution, the Court finds that although the testimony did not graphically describe penetration, any rational trier of fact could have found the element of penetration essential to the crime of forcible oral sodomy beyond a reasonable doubt.

As to Petitioner's fourth proposition of error, Petitioner's jury was properly instructed that under Oklahoma law, the elements of robbery with a firearm are as follows: (1) wrongful; (2) taking; (3) carrying away; (4) personal property; (5) of another; (6) from the person of another; (7) by force and fear; (8) through use of a loaded or unloaded firearm or an imitation firearm capable of raising in the mind of the person threatened with such device a fear that it is a real firearm. See Dkt. # 9, Ex 15 (Instruction No. 12, citing OUJI-CR (2d) 4-144). A separate instruction, see Dkt. # 9, Ex. 15 (Instruction No. 13), defined "carrying away" as "removing an article for the slightest distance. Carrying away is more than a mere change of position; it is a movement for purposes of permanent relocation." In rejecting this claim on direct appeal, the OCCA cited Webb v. State, 732 P.2d 478 (Okla. Crim. App. 1987). In Webb, the OCCA held that "[a]sportation or 'carrying away' is accomplished by the slightest movement of the personal property by a wrongdoer who is in actual possession." Petitioner claims that as to his conviction on Count 2, there was insufficient evidence to prove that he "carried away" any of Mr. Galatas' personal property. At trial, Galatas testified that Petitioner held a gun to his temple and demanded his wallet. See Dkt. # 10, Tr. Trans. at 152. Petitioner snatched the wallet out of Galatas' hand. Id. at 153. Galatas gave his wallet because Petitioner had a gun. Id. at 155. Petitioner threw the wallet back to Galatas because the wallet was empty. Id. at 163. Petitioner also took cell phones belonging to Galatas and Engel. Id. at 167-68. After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that Petitioner robbed Galatas by taking his wallet and cell phone at gun point. The element of "carrying away" essential to the crime of robbery by firearm was demonstrated beyond a reasonable doubt by the evidence demonstrating that Petitioner moved the wallet and cell phone from Galatas, if only slightly, and had actual possession of the items, if only briefly.

In summary, after viewing that evidence in the light most favorable to the prosecution, the Court finds the jury properly could have found the elements of both forcible oral sodomy for Count 3 and robbery with a firearm for Count 2. The Court concludes the evidence presented at Petitioner's trial was sufficient to sustain his convictions. Therefore, Petitioner has failed to satisfy the § 2254(d) standard and his request for habeas corpus relief based on challenges to the sufficiency of the evidence for the forcible oral sodomy and robbery with a firearm convictions shall be denied.

### 3. *Failure to instruct on lesser included offense (ground 3)*

As his third proposition of error, Petitioner alleges that the trial court erred in failing to *sua sponte* instruct the jury on the lesser included offense of sexual battery. The Tenth Circuit Court of Appeals has held that the failure of a state court to instruct on a lesser included offense in a noncapital case never raises a federal constitutional question. Lujan v. Tansy, 2 F.3d 1031, 1036 (10th Cir. 1993). Tenth Circuit precedent establishes a rule of "automatic non-reviewability" for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction. Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004) (stating that neither the Tenth Circuit nor the United States Supreme Court has ever recognized a federal constitutional right to a lesser included offense instruction in non-capital cases). Accordingly, habeas relief shall be denied on Petitioner's claim that his constitutional rights were violated because the trial court failed to give jury instructions on a lesser included offense.

*CONCLUSION*

After careful review of the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

**ACCORDINGLY, IT IS HEREBY ORDERED that** the petition for writ of habeas corpus (Dkt. # 1) is **denied**. A separate judgment shall be entered in this matter.

DATED THIS 25th day of February, 2009.

TERENCE KERN
UNITED STATES DISTRICT JUDGE